Ready to hear argument now in the case of United States v. Bowyer. Mr. Bugnay. Good morning, Your Honors. May it please the Court. My name is Joe Bugnay. I represent Mr. Andre Bowyer. There are a few things in sentencing that are indispensable. First, you've got to get the guidelines right. Second, you've got to figure out the 3558 factors and consider them. Third, you've got to give an adequate reason for the appellate court to review. But the most important of all of those is that the defendant be able to say his piece, that the defendant be able to allocute, that the defendant be able to speak meaningfully about what mitigation matters most to him. And that's what this appeal is about. Now, the denial of the ability to allocute can come in many forms. It can be the judge passing over it. That happens sometimes. It can be the judge just going right to sentencing or announcing beforehand. That's been in this court's precedent. And here, this case is unique. It is a judge stifling the defendant in his ability to communicate to the court what mattered most to him. So, Mr. Bugnay, if we put to the side more the boilerplate portions of the sentencing, it looks like the actual allocution is from page 12, line 8, to page 17, line 4. About five pages, 225 lines of transcript. It looks like the judge speaks about 80% of that time. We don't have instances where the defendant's being cut off, where there's sentences that are not complete. Is your argument that because the district court occupied that amount, the 80 or 81% of the allocution, that that in and of itself is the reversible error? No. No, that itself. I don't think there's a pure calculus, though I think that would be part of what you'd be looking at. You'd say that's a complete domination of the allocution by the judge. I do disagree, and I just push back. I think he is being cut off at times. There's times where the judge says, let me finish. There's times where, you know, it's mid-sentence, sort of that splinter that you have Mr. Boyer trying to get out a little bit more, and the court cutting him off. And I don't think that it's any one point where you'd say, at 50%, that's error. At 80%, that's very, very big error. At 20%, that's error as well. I think instead you look holistically, and was this a meaningful opportunity to allocute? And when you have the domination by the court, the cutting off by the court, the inability for him to actually get going with what he wanted to convey to the court, by the end of it, even those words that he's uttering, they're just kind of he's being cowed into timidity. I mean, that was the words from the Ninth Circuit. He doesn't have a meaningful opportunity to present what matters most to him. How do we know that, though, from the cold transcript? Mr. Greenberg was the one who was at the sentencing? Mr. Greenberg was at the sentencing. I think, well, the prejudice is presumed if you find that he doesn't have that. But I think you can tell by the fact that he can't get out a full explanation. He can't really speak to that. And instead, when he's trying to speak to what matters most to him, the court's constantly interjecting and then saying, look, you're not getting it. That's so cockamamie or whatever the word was that he used to say, like, I'm confused on all this. And he doesn't let him explain. And that's a double-edged sword, and you're not really taking responsibility. All of that is stopping him. It's natural that you're being stopped at that moment. He's not a trained advocate where he's learning to pivot, and he's trying to bring back, you know, what are my three focal points that I want to get to the court. So this is a guy who just wants to say what he wants to say. The question is, why is a defendant worse off if a judge says something like, you're arguing X. X has no potential to persuade me. Why don't you try a different line of argument? That, it seems to me, is a big help to a defendant. And I think when you're looking at, like, the Covington, like, hey, I want to direct you back to something else right there. But if you're saying that's not going to move me ever, well, that's because you actually haven't heard it. This is his turn to speak. And maybe it takes 10 minutes. Maybe it takes 15 minutes. The question I'm asking is, do you think that you would be better off if judges sat in stony silence through your argument and never told you what the judge thought was most important about the appeal? No. All right. You don't think you would be better off. Why do you think a defendant is better off if a judge sits in stony silence during elocution? Because it's different. And here I'm trying to persuade you. And I want to know what the points are that you're going to struggle with. That's what elocution is. It's an effort to persuade the judge. It's not just an effort to persuade. It's an opportunity for him to say what matters most to him. And that's why the perception of the public. You can have guys who get to say their piece, and they get rocked. But they feel like I got to say what mattered most to me. And the judge listened. Sometimes the judge says, hey, I disagree on that. But I felt heard. And that's part of what goes into the sentencing process. That's why it's an individualized sentencing. Your position does not foreclose what Judge Easterbrook is talking about. No. As I hear you, you are saying our case law demands that someone be able to say, talk about the mitigation that is important to them. And a judge absolutely can direct them, can ask questions, can engage. It's about the how. Yes. It's about the how often. It's about the manner. That's correct. And so it's not either or. It's both and. That's exactly it. And here, to the extent that it's shut down, if it is saying, look, I don't find that this is particularly helpful to you. But I want to listen more. I had the benefit of practicing for two judges who were on opposite ends of the spectrum. Judge Randa, who sat stone cold. But he would then engage after the person had his ability to speak. And he would give a profound insight into what was just said to him. And it was actually a great opportunity because the person felt heard. They felt like everything they wanted to say was there. And then there was Judge Clavert. And Judge Clavert was like Oprah. In some ways, he was just drawing out a little bit more. And he would say, wait, was that your grandma on your mom's side or your dad's side? Okay, thank you. And keeps on coming. It's that there was a meaningful opportunity to draw out what matters most. And in both instances, both judges were listening. Exactly. And both judges allowed the defendant before them to speak. Exactly. And that's where it stops. And whether it's at the 50% of talking or 80% of talking, here it was a complete shutdown. Isn't the what matters most, though, the being heard, isn't that all towards the end of a more mitigated sentence? Anytime the allocution is happening, the defendant is making that statement because they are asking the court for their preferred result. I don't think that's always the way it goes. And I think sometimes allocution is very important, even in a mandatory minimum or an 11C1C, or even in a stat max case. So it's not just that I get the preferred result. It's that this is an intense experience for everybody involved, but especially for the person who's sitting next to me. That is an experience where their liberty is being stripped. And so it's that last vestige of dignity. It's one that's been passed on from the 1600s, that we're making sure that you get this. You may not get the ability to do a lot of things, but you have this ability now to speak your piece. So it's not just that we're doing this to persuade. But that is actually part of it, the persuasion, because when the defendant is able to speak, when Mr. Boyer is able to speak, you can either go in there and be like, you know, mea culpa, mea culpa, mea max culpa. And the same words said, uttered by the same person, but the judge gets a flavor for him. And the judge knows, like, actually, I really get this person. Why don't you argue against your point, though, because all we have is a transcript. None of us were there. Well, we know that he didn't get the chance to say it all. And that's the thing. If you get the chance to say it all, the judge, just like this court said in Covington, the judge can reject it all. Do we know that, though? I mean, do we know that Mr. Boyer stopped talking at certain points because he was interrupted, or do we know that at some point Mr. Boyer felt he had said what he had to say? I think any way you read this transcript, he stopped talking not because he felt that he had been heard. He felt he stopped talking because it had been cowed into him. There was nothing left for him to do. And then you look at the end of it, it's just, yes, sir, it's just a cross-examination. So I think you do know here that this is not him saying, I've now said my piece, because he never got the ability to start saying his piece. He's interrupted right away, 13 words. Then he goes back and he just keeps on getting interrupted. And you can count it conservatively as six interruptions. This morning I counted it at nine. And I think there's reasonable disagreement, but that's the point, is here in this case this court cannot be confident that he had the ability to speak his piece. And that's why this has to be remanded. It gets remanded so that he can stand there and tell the court what mattered most to him. And the court can say, I reject it, or actually now thank you. I've heard you all, and I want to, I'm going to give you a lower sentence. And I think it's going to be the latter of those two. If the court can actually sit there and listen and feel the sincerity in what Mr. Boyer has to say, he's going to get a lesser sentence from that court. And that brings to the integrity of the proceedings as well as to the fairness that the public would perceive. Anybody who was in that courtroom that day would say he didn't actually get a chance to allocate. This ancient right, this was not afforded to him. Your Honors, if there's no further questions, I'd rather save the rest of my time. Certainly, Counsel. Ms. Remington. Good morning, Your Honors, and may it please the court. I am Jennifer Remington, and I represent the government. It's important for us to remember that because Mr. Boyer did not raise any issue with his elocution at sentencing, the plain error standard applies in this appeal. And that standard provides the three reasons why this court should affirm. First, no plain error occurred. Second, if any error occurred, it did not affect Mr. Boyer's substantial rights. And third, if any error occurred, this court still should not remand because the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. For an error to be plain, it must be clearly or obviously wrong under current law. If I heard Defense Counsel correctly, during his opening remarks to this court, he said, quote, this case is unique. We know from Rule 32 and this court's cases that it's clearly and obviously wrong for a judge to fail to address a defendant personally or to impose a sentence or strongly suggest that a sentence before the judge gives a defendant the opportunity to allocute. This case does not fall into either of those categories. The judge here personally addressed Mr. Bauer. He said, Mr. Bauer, take your time, and I will be happy to hear anything that you wish to say. And the judge invited Mr. Boyer to speak before it sentenced him. I agree with counsel that this case falls into a gray area. It is unique. The parties seem to agree, based on counsel's reply, that a judge can engage with a defendant during allocution. But what's unclear is the amount of back and forth allowed between a judge and a defendant during his allocution. If we look at this court's Covington's case and its discussion of the Second Circuit's Lee case, I think we find a workable line, at least one that we can apply here, which is that interruptions and questions that are designed to shut down or terminate an allocution are not permissible, whereas interruptions and questions that are designed to engage with the defendant's mitigation points and engage with the defendant in further conversation helpful to the judge's consideration of the sentencing factors are permissible. But there is a perseveration here by the district court. It's the same question. It's the same issue over and over. It's the same issue over and over because that was Mr. Boyer's primary mitigation, which he says expressly in his brief. His point was that he had a relationship with the Diaz family, and that was what he wanted to tell the court. Mr. Boyer actually has not identified anything that he would like to have said during his allocution that he could not because of the judge's engagement. And I think that goes directly into prejudice, but I think it also goes into whether or not the fairness, integrity, and public reputation of the proceedings were impacted. So here we have – Is that flipping the standard and the burden on its head? Because haven't we also said that a defendant is not required to lay out what they might or we're not supposed to engage in speculation about what they might have said? We have to look at whether the meaningful opportunity to speak was there. So the cases that the court is – that's correct based on the way that the court reads the cases. So what the court says is that when – we can't speculate as to what a defendant would have said, but that's because in those cases the defendant didn't have the opportunity to say anything. Those are cases where either the court failed to personally address the defendant and invite him to speak or had already imposed or strongly hinted at a sentence beforehand. This is not a case like Covington where we have to speculate. We know what Mr. Boyer said, and I think in this – I don't think – I disagree with the judge's reading, with Your Honor's reading of the record in that instance. At the end of the court and Mr. Boyer's conversation that probed into his relationship with the Diaz family, the court gave Mr. Boyer another opportunity to speak freely. The court said to him, is there anything else that you want to add? If a judge says to a defendant, it's your turn. I'm happy to hear from you. And then the defendant starts speaking, and the judge consistently interrupts, gives the judge's view, challenges, doesn't let the defendant finish, and then gets to the end and says, anything more? Can we expect a defendant to then persevere? Not being a lawyer, just a defendant in front of the court at this major moment of sentencing, can we honestly expect a defendant, or every defendant, to say, yes, I've got more, let me try a 13th time to fully explain what I was going to say, as opposed to what Mr. Boyer does here, which is basically say, okay, I'm done, Your Honor. I just want to say I'm sorry. To the idea that the court somehow dominated Mr. Boyer, and he was cowed into not being able to communicate with the judge during this allocution or provide an allocution, that's just a misreading of the record. Mr. Boyer pushes back on the judge's insights into his relationship with the Diaz family multiple times, and at the end, rather than being cowed and saying, no, Your Honor, I have nothing to say, or no, or anything like that, he says, yes, I'm sorry. I just want to say I'm sorry to Mrs. Diaz. I'm really sorry. So he takes that opportunity and says more, which shows that he has not been dominated. Ms. Remington, does the record reveal the letter that Mr. Boyer submitted to Judge Conley? Yes. The letter is included in the record along, obviously, with counsel's memorandum and then the statements that counsel made during the sentencing as well. How long is the letter? Your Honor, if I'm recalling correctly from the record, it's a couple of pages. The court described it as being a lengthy letter during the sentencing, and the court also told Mr. Boyer that it had read it with some care. And so when we're looking at prejudice, we're looking at the whole record. Have we ever said a letter substitutes for an allocution? We have not, but that's not the question or that's not the argument that I'm making here. The argument that I'm making is that when we're looking at the prejudice portion of the plein air standard, what we should consider is all of the information the court had in front of it. And what the court had in front of it was Mr. Boyer's letter, counsel's memorandum, counsel's statement at sentencing, and Mr. Boyer's statement at the sentencing itself. And in each of those places, Mr. Boyer got to talk about his primary mitigation, his relationship with the Diaz family. And again, he's not pointed to anything that he wanted to say but apparently or allegedly could not say because of the judge's engagement here. Getting back to the plein air standard, which I really think is the crux of this case, there's just no evidence here that the court tried to shut down or terminate Mr. Boyer's allocution. The judge did not tell Mr. Boyer that he had a certain amount of time to speak. The judge did not tell Mr. Boyer that he could not talk about a certain topic. The judge asked questions, and when he asked those questions, gave Mr. Boyer an opportunity to respond to them. And critically, at the end of their back-and-forth conversation, the judge asked him, is there anything else that you want to add? He provided him that opportunity to speak freely again at that moment in the sentencing. Using the last few minutes, I'll briefly talk about prejudice. As this court knows, an error affects substantial rights when it prejudices the defendant. And this court will presume prejudice when there is any possibility that the defendant would have received a lesser sentence had the district court heard from him before imposing the sentence. Covington really provides the best benchmark for assessing prejudice in this case because there, like here, we did hear from the defendant. And what we can take away from the Covington court's discussion of prejudice is that interruptions and questions during allocution do not prejudice the defendant when he is already touched on his mitigation topics. And as in Covington, Mr. Boyer told the court about his primary mitigation. He highlighted his relationship with the Diaz family. He did this through his counsel's memo, his own letter, and the arguments made at sentencing. He talked about the relationship with the Diaz children and what that meant to him. He talked about his heartache at learning that he was not the biological father of a child that he had cared for. And he talked about being unable to biologically father children. And again, critically, he has not identified a specific fact or concrete piece of information he wanted to provide during allocution but could not because of the judge's engagement. And again, our judge here re-invited Mr. Boyer to speak freely after a period of conversation, saying, is there anything else you want to add? The judge here simply did not find Mr. Boyer's primary mitigation compelling, and that was the judge's prerogative. There are not a lot of instances, though, where the allocution is 80% court, 20% defendant, correct? Are you asking me if there are instances of that? There are not many instances of that, are there? I could not speak to all sentencings across the country. I think you will find that many judges are active and engaged during a sentencing, and I think this court can provide some additional guidance about what it would like to see from district courts in terms of the type. Thank you, counsel. Thank you. Mr. Barkney, you have 20 seconds. Judge Brennan, to your exact question, when he starts weeping, that is the shutdown. And we can't just take those words and say, was this a meaningful allocution? We know at that point that he's not having any kind of ability to speak about what matters most, and that is affecting the integrity of those proceedings, and that's why this should be remanded. Thank you. Thank you. The case is taken under advisement.